## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**PRINCEPS INTERFACE
TECHNOLOGIES LLC,**

**Plaintiff,**

**v.**

**APPLE INC.,**

**Defendant.**

Civ. No. _____


**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Princeps Interface Technologies LLC ("Princeps" or "Plaintiff"), for its

Complaint against Defendant Apple Inc. ("Apple" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the

United States, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

2.      Plaintiff Princeps is a limited liability company organized under the laws of the

State of Delaware.

3.      Upon information and belief, Defendant Apple Inc. ("Apple") is a company

organized under the laws of the State of California having a principal place of business at One

Apple Park Way, Cupertino, California 95014.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5.      Venue with respect to Defendant Apple is proper in this District under 28 U.S.C. § 1400(b) because Apple maintains a regular and established place of business in this District and has committed infringing acts in this District.

6.      Upon information and belief, Defendant Apple maintains at least one regular and established place of business in this District, the Apple Store located at 125 Christiana Mall, Newark, Delaware 19702.  (Source: https://www.apple.com/retail/christianamall/, last accessed and downloaded on June 13, 2019.)  Upon information and belief, Defendant Apple provides and sells the "Accused Instrumentalities" (as explained in greater detail below) through at least this Apple Store.

7.      This Court has personal jurisdiction over Apple.  Apple is amenable to service of summons for this action.  Furthermore, personal jurisdiction over Apple in this action comports with due process.  Apple has conducted and regularly conducts business within the United States and this District.  Apple has purposefully availed itself of the privileges of conducting business in the United States, and more specifically in the State of Delaware and this District.  Apple has sought protection and benefit from the laws of the State of Delaware by placing infringing products into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in this District.

8.      Apple – directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its products in the United States and this District.  Apple has purposefully and voluntarily placed one or more of its infringing products into the stream of commerce with the awareness and/or intent that they will be purchased by consumers in this District.  Apple knowingly and purposefully ships infringing products into and within this District through an established

distribution channel.  These infringing products have been and continue to be purchased by consumers in this District.  Upon information and belief, through those activities, Apple has committed the tort of patent infringement in this District.

9.      On information and belief, Defendant Apple is subject to this Court's general and specific personal jurisdiction because Apple has sufficient minimum contacts within the State of Delaware and this District, pursuant to due process and/or the Del. Code. Ann. Tit. 3, § 3104, because Defendant Apple purposefully availed itself of the privileges of conducting business in the State of Delaware and in this District, because Defendant Apple regularly conducts and solicits business within the State of Delaware and within this District, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Delaware and this District.  Having purposefully availed itself of the privilege of conducting business within this District, Defendant Apple should reasonably and fairly anticipate being brought into court here.

## **BACKGROUND**

### **The Inventions**

10.     Timothy B. Higginson is the sole inventor (hereinafter "the Inventor") of U.S. Patent No. 6,703,963 ("the '963 patent" or "the patent in suit").  A true and correct copy of the '963 patent is attached hereto as Exhibit A.

11.     The '963 patent resulted from the pioneering efforts of the Inventor in the area of small-profile multifunctional input devices.  These efforts resulted in the development of novel input devices, and methods for operating them.  The input devices utilize one or more functional modes and one or more domain levels associated with entering input values into the devices.  A

provisional patent application directed to the inventions was filed in the United States in

September 2001.

12.     At the time of the Inventor's pioneering efforts, the most widely implemented

technology used to address keying input data still involved implementing variants of the

traditional two-handed QWERTY keyboard.  In that type of system, as explained in the '963

patent:

> The QWERTY keyboard has been used as an input means since the
> development of the very first electronic devices.  However, with the development
> of smaller, portable electronic devices, use of the QWERTY keyboard with these
> devices has certain drawbacks.  As electronic devices have become smaller
> through advances in integrated circuitry, the traditional QWERTY keyboard is
> simply too large for many of the smaller electronic devices as the keyboard must
> be large enough to accommodate both hands of the user.  Moreover, due to the large
> size of the traditional keyboard, it is not sufficiently portable for use in
> conjunction with many of these electronic devices.
>
> Previous attempts to overcome this short coming of the keyboard have
> included the use of foldable keyboards as shown in U.S. Pat. No. 6,174,097 and
> the use of keyboards that allow for the direct connection of the electronic device
> to a full-size portable QWERTY keyboard as shown in U.S. Pat. No. 6,108,200.
> However, neither of these approaches reduces the area required for the use of the
> keyboard.
>
> …An additional drawback to the QWERTY keyboard is that it was
> designed to accommodate the mechanical components of the first typewriters, as
> such, the layout of its keys does not facilitate the rapid input of data from the
> keyboard.
>
> …Another drawback to the traditional QWERTY keyboard is that it has
> typically only had a single functionality, namely alphanumeric input.  However,
> with the decrease in size of many of electronic devices, additional functions are
> required from a smaller keyboard that current keyboards cannot accommodate.

(*See* Exhibit A, '963 patent at 1:37 to 2:23.)[1]

---

[1] Citations to patents in this Complaint refer to columns and lines within columns of any cited
patent.  For example, the citation referenced by this footnote refers to column 1, at line 37
through column 2, at line 23 in the '963 patent.

13.    The Inventor conceived of the inventions claimed in the '963 patent as a way to

address the aforementioned drawbacks of the prior art.  As explained in the '963 patent:

> The miniaturization of many electronic devices has allowed them to be
> designed such that they can be operated with only a single hand of the user or has
> made their use incompatible with a full-sized QWERTY keyboard.  Because the
> QWERTY keyboard was developed for two-handed use with the original
> typewriter, it cannot be readily adapted for efficient use by only a single hand, or
> one or both thumbs when used in conjunction with many electronic devices.
>
> …Previous attempts to increase the speed and efficiency of data input into
> an electronic device have included the development and use of voice-recognition
> software.  However, the error rate typically associated with this type of software
> has thus far prevented its large-scale use as an effective input device.
>
> …Previous attempts to overcome shortcomings of the QWERTY
> keyboard have included the use of alternative keyboards, such as the standard 12-
> key arrangement found on most telephone and cellular phones.  A drawback of
> using the standard telephone as a data-input device is the slow rate of input due to
> use of only a single finger or thumb to activate the keys.

(*See* Exhibit A, '963 patent at 1:56 to 2:30.)

> The present invention provides a multifunctional input device.  The input
> device includes a functional mode which defines the mode of operation of the
> input device.  Each functional mode includes one or more domain levels with
> each domain level containing one or more domain-level values.  Each domain
> level-value within each functional mode is assigned to one of a plurality of
> programmable input keys.  The domain-level value assigned to each input key
> controls the function of that input key within a given functionality and domain
> level.  The present invention also includes a display to indicate the domain-level
> value associated with each of the programmable input keys within a given
> functionality.

(*See* Exhibit A, '963 patent at 2:33-45.)

**Technological Innovation**

14.    The patented inventions disclosed in the '963 patent resolve technical problems

related to data input devices, and particularly, to problems related to the utilization of small-

profile data input devices.  As the patent explains, there are several limitations of the prior art as

regards full-sized QWERTY keyboards in that:

[T]he keyboard must be large enough to accommodate both hands of the user.  Moreover, due the large size of the traditional keyboard, it is not sufficiently portable for use in conjunction with many of these electronic devices.

('963 patent at 1:40-48.)

The miniaturization of many electronic devices has allowed them to be designed such that they can be operated with only a single hand of the user or has made their use incompatible with a full-sized QWERTY keyboard.

('963 patent at 1:56-59.)

Moreover, the size of the standard QWERTY keyboard, which can have in excess of 100 keys, often limits its versatility and utility as an input device.

('963 patent at 1:64-66.)

15.     The claims of the '963 patent do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the patent in suit recite inventive concepts that are deeply rooted in computerized data input and data processing.  They offer technology that overcomes problems specifically arising out of how to maximize efficiency and versatility associated with entering data into a small profile data input device.

16.     In addition, the claims of the patent in suit recite inventive concepts that improve the functioning of electronic data input devices catalogs, particularly as they recite a combination of controls by which a user can dynamically generate user-specific data input interfaces for the devices.

17.     Moreover, the claims of the '963 patent recite inventive concepts that are not merely routine or a conventional use of computer technology or transaction processing.  Instead, the patented inventions disclosed in the patent in suit provide a new and novel solution to specific problems related to automating and customizing the process of entering data into small profile input devices by dynamically utilizing user specified control combinations.  The claims of

the patent in suit thus specify how interfaces for entering user data are manipulated to yield a desired result.

18.     And finally, the patented inventions disclosed in the patent in suit do not preempt all the ways that user-specific interface selections may be used to improve entering data into small profile input devices, nor does the patent in suit preempt a well-known or prior art technology, such as a standard QWERTY keyboard.

19.     Accordingly, the claims in the '963 patent recite a combination of elements sufficient to ensure that the claims, in substance and in practice, amount to significantly more than a patent-ineligible abstract idea.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 6,703,963

20.     The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

21.     On March 9, 2004, the '963 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Universal Keyboard."

22.     Princeps is the assignee and owner of the right, title and interest in and to the '963 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

23.     Upon information and belief, the Defendant has directly infringed and continues to directly infringe at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell and/or importing information input devices such as iPhones, iPads and iPods with an operating system such as the iOS operating system (the "Accused Instrumentalities"), as set forth in detail in the attached preliminary and exemplary

claim charts provided in Exhibit A-1.  (*See* Princeps' Claim Chart for claims 1, 2, 3, 9, 12 and 60 of the '963 patent, Ex. A-1 at 1-12.)

24.     The Accused Instrumentalities infringed and continue to infringe claims 1, 2, 3, 9, 12 and 60 of the '963 patent during the pendency of the '963 patent.

25.     Apple was made aware of the '963 patent and its infringement thereof at least as early as the filing of this Complaint.

26.     Users in Delaware and elsewhere in the United States have used and interacted with each Defendant's systems as recited in claims 1, 2, 3, 9, 12 and 60 of the '963 patent.

27.     Upon information and belief, since at least the time of receiving this Complaint, Apple has induced and continues to induce others to infringe at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Apple's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent.

28.     In particular, Apple's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing instructional materials and/or services related to the Accused Instrumentalities.  On information and belief, Apple has engaged in such actions with specific intent to cause infringement and with willful blindness to the resulting infringement because Apple has had actual knowledge of the '963 patent and that its acts were inducing infringement of the '963 patent since at least the time of receiving this Complaint.

29.     Upon information and belief, Apple is liable as a contributory infringer to at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(c) by offering to sell,

selling and importing into the United States input device technology, such as the iOS operating system, and/or the Apple devices, such as the iPhone, the iPad or the iPod, which are especially made or adapted for use in an infringement of the '963 patent. The Accused Instrumentalities are material components for use in practicing the '963 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

30.     On information and belief, Defendant Apple is a for-profit organization with revenues of approximately $266 billion U.S.D. per year. Moreover, Defendant, its employees and/or agents make, use, sell, offer to sell, import, provide and cause to be used the Accused Instrumentalities for Defendant's customers, leading to direct and indirect revenues and profit. As one example of indirect profit, entities such as Defendant will frequently offer the Accused Instrumentalities at reduced pricing as an inducement to attract select categories of customers, such as students, who then purchase additional products or services. On information and belief, without the availability of infringing tools such as the Accused Instrumentalities, Defendant would be at a disadvantage in the marketplace and would generate less revenue overall.

31.     On information and belief, since at least the time it received notice by this Complaint, Apple's infringement has been and continues to be willful.

32.     Princeps has been harmed by Apple's infringing activities.

33.     Princeps reserves the right to modify its infringement theories as discovery progresses in this case. It shall not be estopped for purposes of its infringement contentions or its claim constructions by the claim charts it provides with this Complaint. Princeps intends the claim chart (Exhibit A-1) for the '963 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure. The claim chart is not Princep's preliminary or final infringement contentions or preliminary or final claim construction positions.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Princeps demands judgment for itself and against Defendant Apple as follows:

A.    An adjudication that the Defendant has infringed the '963 patent;

B.    An award of damages to be paid by Defendant adequate to compensate Plaintiff for the Defendant's past infringement of the '963 patent, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D.    An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

Dated:  June 14, 2019

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin (#4241)
tdevlin@devlinlawfirm.com
Patrick R. Delaney (*pro hac vice* to be filed)
pdelaney@devlinlawfirm.com
1526 Gilpin Ave.
Wilmington, Delaware 19806

Telephone: (302) 449-9010
Facsimile: (302) 353-4251

TOLER LAW GROUP, PC

Jeffrey G. Toler (*pro hac vice* to be filed)
jtoler@tlgiplaw.com
8500 Bluffstone Cove
Suite A201
Austin, Texas 78759

Telephone: (512) 327-5515
Facsimile: (512) 327-5575

*Attorneys for Plaintiff,*
*Princeps Interface Technologies LLC*